Billy Earl MITCHELL *v.* STATE of Arkansas

CR 83-108                                             711 S.W.2d 821

Supreme Court of Arkansas
Opinion delivered July 7, 1986

*Achor & Rosenzweig,* by: *Jeff Rosenzweig,* for appellant.

*Steve Clark,* Att'y Gen., by: *Theodore Holder,* Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. On May 25, 1983 Billy Earl Mitchell was convicted of four counts of aggravated robbery. As an habitual offender he was sentenced to four consecutive life sentences. He did not testify in his own behalf and at sentencing he offered no reason why sentence should not be imposed. The

judgment on those convictions was unanimously affirmed by this court on December 19, 1983. *Mitchell* v. *State*, 281 Ark. 112, 661 S.W.2d 390.

Mitchell now requests an evidentiary hearing on a Rule 37 petition. He contends he was in Seattle, Washington on June 1, 1982, when the robberies occurred. That defense was presented at trial and was rejected by the jury. It affords no basis for post-conviction relief. *Hayes* v. *State*, 280 Ark. 509, 660 S.W.2d 648 (1983). The petition is entirely unsubstantiated and consists of nothing more than the bare assertion that Mitchell told his appointed counsel there were persons who could corroborate his alibi defense that were not called as witnesses. The petition lists five individuals (Linda Smith, Barbara Beaver, Peggy Slaughter, Willie Denton and James Poke, Jr.) whose names were allegedly given to defense counsel as being able to verify Mitchell's presence in Seattle when the crime was committed.

We have said numerous times that allegations without substantiation do not justify a hearing. *Gilbert* v. *State*, 282 Ark. 504, 669 S.W.2d 455 (1984). And that bare allegations, without factual support do not justify an evidentiary hearing. *Blakely* v. *State*, 283 Ark. 138, 671 S.W.2d 183 (1984); *Jones* v. *State*, 283 Ark. 363, 676 S.W.2d 738 (1984).

The petition does not give the addresses of these individuals, nor tell us how they knew Mitchell, nor even that they would testify Mitchell was in Seattle on June 1, 1982 as alleged. For that matter, the petition does not even purport to claim that defense counsel did not contact these people. He claims simply that he gave his lawyer their names. We spoke to that argument in *Tackett* v. *State*, 284 Ark. 211, 680 S.W.2d 696 (1984):

> It is well settled that the decision to call certain witnesses and reject other potential witnesses is largely a matter of trial strategy. Counsel must use his own best judgment to determine which witnesses will be beneficial to his client. See *Hayes* v. *State*, 280 Ark. 509, 660 S.W.2d 648 (1983). It is possible that another attorney might have attempted, and perhaps succeeded, in having the testimony of the witnesses admitted into evidence, but petitioner has not established that counsel's decision prejudiced him or amounted to more than a tactical decision.

In order for Billy Mitchell to prevail in his allegation of ineffective assistance of counsel, he must overcome a strong presumption that his counsel was competent. He must be prepared to prove that his representation was so "patently lacking in competency or adequacy that it was the court's duty to correct it." *Davis* v. *State*, 267 Ark. 507, 592 S.W.2d 118 (1980). Moreover, he must prove by *clear and convincing evidence* that he was so prejudiced that he did not receive a fair trial. *Jeffers* v. *State*, 280 Ark. 458, 658 S.W.2d 869 (1983). And that the result of the trial would probably have been different had it not been for defense counsel's incompetence. *Lascano* v. *State*, 282 Ark. 501, 669 S.W.2d 453 (1984). *Strickland* v. *Washington*, 466 U.S. 668 (1984). Mitchell has failed to do that.

The petition further charges that the testimony of petitioner's parole officer, Randy Noah, who testified that Mitchell did not show up for an appointment on June 2, 1982 (the day after the robbery) had no probative value since Mitchell's defense was that he was in Washington state. Though Noah's status as a parole officer was not exposed, a reference to his "official duties" told the jury indirectly that Mitchell was a convicted felon. Thus, he argues, there was prejudice to the defense purely for the sake of prejudice since the testimony had no redeeming probative value to the prosecution. This argument would be better left unsaid for two reasons—it was raised in the appeal and therefore it is not subject to post-conviction relief, *Hayes* v. *State, supra*; more importantly, defense counsel made a timely motion for a mistrial, which hardly supports the allegation of ineffective assistance. Aside from that, Noah's testimony had a distinct probative value to the prosecution: his testimony was that Mitchell was in his office in Little Rock on May 25, 1982, and told him he was driving a 1968 Ford XL-500 two-door automobile, the car used in the robbery. Mitchell was scheduled to return on June 2 but failed to appear.

One other allegation of the petition warrants response: the petition implies that Mitchell's guilt is doubtful, i.e. "It is important to realize that in this case the identification of Petitioner was quite weak." To the contrary, the proof that Mitchell was one of the robbers was clear and convincing, and based on both direct and circumstantial evidence. Four masked men robbed the Godfather's Pizza restaurant in North Little

Rock at about 10:30 p.m. One of them was wearing a yellow shirt, gray pants, orange socks and silver, Corfam tuxedo slippers. Four or five victims had their money and billfolds taken from them. As the robbers were leaving in a 1968 Ford XL-500 two-door automobile they ignored a police signal to stop and drove off at high speed. The Ford evaded the police long enough for three of the men to escape on foot, before running into a ditch. Officer Polk saw the driver, whom he positively identified as Billy Mitchell, run from the car wearing a yellow shirt, gray pants, orange socks and silver shoes. The masks, money and billfolds, all identified by the victims as the articles taken from them, were recovered.

The car was identified as belonging to Joe Mitchell, Billy's father. Mitchell was contacted that night at his home and told the officers the car was in Billy's custody, that Billy lived with his mother at 4719 Patterson Street in North Little Rock. At trial Mitchell testified the car had been stolen, but on cross-examination he admitted the theft was not reported to the police until the following day.

The defense called four witnesses: Ms. Diane Paige, Billy's sister, testified that on May 26, 1982 she and Billy's mother, Bertha Thomas, put Billy on a bus at Conway, Arkansas, bound for Washington, that he called her long distance after he arrived three or four days later. Asked if he told her where he was calling from, she said, "He was in Washington. I don't know if it was Seattle or D.C." Mrs. Paige admitted that when the police came to her home on June 1 or 2 asking her brother's whereabouts she did not tell them he was in Washington.

Mrs. Bertha Thomas testified that Billy was living with her during the latter part of May, 1982. She said she went with her daughter to put Billy on a bus on May 26, 1982. When asked where the station was located she said, "At Lonoke. I mean. Just a minute, was it Lonoke or Carlisle?" Later, she was unable to recall where it was. She said when the police came looking for Billy she didn't tell them where he was because she didn't know where he was going when he left on the bus. Nor did she tell them he had left the state on May 26.

Another witness for the defense, Glenn Mosley, an inmate at the Department of Correction, testified that he had known Billy Mitchell for six or seven years. He said that on June 2 or 3 he had

received a letter from Billy addressed to him at the Pulaski County Jail. The letter was postmarked Seattle, Washington. On cross-examination he admitted he did not know exactly when he got the letter.

Another inmate, James Norwood, testified that he had participated in the June 1 robberies. He said Billy Mitchell was not one of the robbers, though he admitted Billy's car was used. He said he and Sidney Johnson robbed the restaurant while the other two, whom he could not identify, remained in the car. On cross-examination he admitted that he had given the police a sworn, detailed statement shortly after the robberies in which he named Billy Mitchell as one of the robbers. He said his earlier statement was false.

The petition in this case provides no substance to necessitate a hearing. It consists of bare allegations and conclusory assertions. The trial record demonstrates that defense counsel, who was court appointed at little or no compensation, did the best he could with what he had to work with. Certainly the petition provides no basis whatever for ruling otherwise. Nothing in the record suggests his representation was "a farce and a mockery" (*Davis* v. *State*, 267 Ark. 507, 592 S.W.2d 118 (1980)) and, accordingly the petition is denied.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I think petitioner is entitled to an evidentiary hearing on his request for Rule 37 relief. All parties agree that *Strickland* v. *Washington*, 466 U.S. 668 (1984), is controlling. The real issue is whether sufficient grounds are alleged which, if proven, constitute ineffective assistance of counsel.

As an alibi defense, the defendant alleges that he was in the State of Washington on the date the crime was committed. He also alleges that he gave his appointed defense counsel the names and addresses of several people in Washington who could verify his presence in that state on the date in question. No fair-minded person could doubt that if witnesses testified that petitioner was over 2000 miles away at the time of the crime, that this proof would be much stronger than if witnesses simply testified that he was not in Little Rock at the time of the crime. With the latter

testimony, all the witnesses were saying was that he was not in their presence when the crime was committed. In the present case it is important to note that the other persons convicted of this crime testified that petitioner was not with them when they committed the aggravated robbery of Godfather's Pizza.

The appointed defense attorney apparently made no attempt to obtain an out of state subpoena for the Washington witnesses. Since he had the names and addresses of several of these witnesses, it was reasonable to expect him to try to get at least one witness present for the trial. Failure to do so, under the circumstances of this case, amounts to ineffective assistance as defined in *Strickland*. There is no way of determining whether the allegations are true unless the trial court gives the petitioner a chance to prove his allegations and has the opportunity to examine the allegations.

I would grant the petition.